946 F.2d 214
 21 Fed.R.Serv.3d 179
 Martin HARRIS, Jesse Kithcart, Jonathan Lewis, Roy Cold,
Carol Ransome, John Cummings, Raymond Whittington,
and Derrick Jones,
v.
Joan REEVES, in her official capacity as Commissioner of the
Department of Human Services of the City of Philadelphia;
Rev. Albert F. Campbell, Labora M. Bennett, James D. Barber,
Allen M. Hornblum, M. Mark Mendel, Donald J. Padova, each in
his or her official capacity as a member of the Board of
Trustees of the Philadelphia Prison System; J. Patrick
Gallagher, in his official capacity as Superintendent of the
Philadelphia Prison system; Willie Gray, in his official
capacity as Warden for Holmesburg Prison; Press Grooms, in
his official capacity as Warden of the Detention Center;
Harry Moore, in his official capacity as Warden of the House
of Corrections; James S. White, in his official capacity as
Managing Director in the City of Philadelphia; Hon. W.
Wilson Goode, in his official capacity as Mayor of the City
of Philadelphia; and the City of Philadelphia.
Lynne Abraham, District Attorney of Philadelphia County,
Proposed Intervenor, Appellant.
 Nos. 91-1068, 91-1194.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 5, 1991.
Decided Oct. 4, 1991.
Rehearing and Rehearing In Banc Denied Oct. 31, 1991.
 
 Sarah B. Vandenbraak (argued), Chief, Civ. Litigation, Laurie Magid, Asst. Dist. Atty., Gaele McLaughlin Barthold, Deputy Dist. Atty., Philadelphia, Pa., for intervenor-appellant.
 David Richman (argued), Philip H. Lebowitz (argued), Neill C. Kling, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for plaintiffs-appellees.
 Charisse R. Lillie (argued), City Sol., Thomas J. Wamser, First Deputy City Sol., Philadelphia, Pa., for defendants-appellees.
 Joseph C. Kohn, Kohn, Savett, Klein & Graf, Philadelphia, Pa., for amici curiae United Civic Ass'n of the Northeast, Boulevard Civic Ass'n, Bridesburg Civic Ass'n, Burholme Civic Ass'n, Central Northeast Civic Ass'n, Frankford Valley Civic Ass'n, Greater Bustleton Civic Ass'n, Holmesburg Civic Ass'n, Juniata Civic Ass'n, Lawncrest Civic Ass'n, Liberty Bell Civic Ass'n, Mayfair Civic Ass'n, Millbrook Civic Ass'n, Oxford Circle Civic Ass'n, Parkwood Civic Ass'n, Sandyford Civic Ass'n, Somerton Civic Ass'n, Tacony Civic Ass'n, Upper Holmesburg Civic Ass'n, Upper Northwood Civic Ass'n, WalPac Civic Ass'n and Wissinoming Civic Ass'n.
 Before STAPLETON, GREENBERG and ALDISERT, Circuit Judges.
 OPINION OF THE COURT
 GREENBERG, Circuit Judge.
 
 BACKGROUND
 
 1
 The Philadelphia District Attorney, Lynne Abraham, appeals from two orders of the district court in this prison condition litigation. The appeal at No. 91-1068 is from an order of January 14, 1991, denying her motion to intervene and the appeal at No. 91-1194 is from an order of March 11, 1991, approving a settlement of the case. The district attorney has sought to intervene because she objects to aspects of the settlement providing for the release of certain prisoners. We will affirm the order denying intervention and accordingly will dismiss her appeal from the order approving the settlement. Furthermore, we will vacate an order we entered on August 15, 1991, partially staying the order of March 11, 1991.
 
 
 2
 This case is a class action originally filed in the district court in April 1982 by ten inmates of Philadelphia's Holmesburg Prison who alleged that the conditions at that prison were unconstitutional. The defendants are the City of Philadelphia and various city and state officials, not including the district attorney. In January 1984 the district court dismissed the action on res judicata, Eleventh Amendment, qualified immunity, and abstention grounds, in part because there was state court litigation concerning the constitutionality of the Pennsylvania state court prison conditions, but we reversed and remanded the case for further proceedings. Harris v. Pernsley, 755 F.2d 338 (3d Cir.), reh'g denied, 758 F.2d 83 (3d Cir.), cert. denied, 474 U.S. 965, 106 S.Ct. 331, 88 L.Ed.2d 314 (1985). Subsequently, the plaintiffs filed an amended complaint expanding the class to include the inmates of all institutions comprising the Philadelphia prison system. Settlement negotiations commenced and on August 15, 1986, a proposed consent decree was filed. On August 19, 1986, the Philadelphia district attorney filed a motion to intervene as of right under Fed.R.Civ.P. 24(a)(2)[1] or, in the alternative, for permissive intervention under Fed.R.Civ.P. 24(b).[2] Thereafter, on October 3, 1986, partially because of the district attorney's views, a second consent decree was filed, which replaced the earlier consent decree.[3]
 
 
 3
 On December 31, 1986, the district court denied the district attorney's intervention motion and approved the second consent decree with some modifications. Harris v. Pernsley, 113 F.R.D. 615 (E.D.Pa.1986), aff'd, 820 F.2d 592 (3d Cir.), cert. denied, 484 U.S. 947, 108 S.Ct. 336, 98 L.Ed.2d 363 (1987). The district court found that the district attorney did not have a legally sufficient interest in the litigation to warrant intervention and it also found, per the requirements of Rule 24(a), that the district attorney's intervention motion was untimely and was thus prejudicial to the existing parties. 113 F.R.D. at 621-22. Furthermore, the district court believed that the city defendants adequately represented any interest the district attorney had in the litigation. Id. at 623. The district court, however, afforded the district attorney objector status. Id. at 625.
 
 
 4
 The district attorney appealed but we affirmed the order denying intervention, as we determined that her legal duties in the criminal justice system did not confer an interest warranting her intervention. Accordingly we did not reach the timeliness or adequacy of representation issues. However, we also noted our approval of the district court's actions affording the district attorney objector status. Harris v. Pernsley, 820 F.2d 592 (3d Cir.), cert. denied, 484 U.S. 947, 108 S.Ct. 336, 98 L.Ed.2d 363 (1987) ["Harris "].
 
 
 5
 Subsequently, Pennsylvania enacted a statute, effective May 24, 1988, which we will call "section 1108," purporting to confer automatic standing on the district attorney in prison litigation under which prisoners might be released or not admitted. The statute provides:
 
 
 6
 Section 1108. District attorneys' standing and interest in prisoner litigation
 
 
 7
 The district attorney shall receive written notice of, and shall have automatic standing and a legal interest in, any proceeding which may involve the release or nonadmission of county prisoners, delinquents or detainees due to the fact, duration or other conditions of custody. In addition to the district attorney's rights in such a proceeding, the district attorney may seek any equitable relief necessary to protect the district attorney's interest in the continued institutional custody and admission of county prisoners, delinquents or detainees.
 
 
 8
 18 Pa.Cons.Stat.Ann. § 1108 (Purdon 1991).[4]
 
 
 9
 Its legislative history reveals that section 1108 was intended to overrule Harris' § denial of the motion to intervene. One of the bill's sponsors stated:
 
 
 10
 this is a commonsense amendment. It is reasonable to assume that our D.A.'s [sic ], who, it is already recognized, have the power to advocate criminal sentences, the power to defend convictions in both state court actions and Federal habeas corpus actions and the power to represent the Commonwealth generally in challenges of the constitutionality of the State's penal statutes, should also have the authority to intervene in lawsuits involving the release of county prisoners.
 
 
 11
 App. at 103 (statement or Representative Wogan). See also App. at 104 (statement of Representative Kosinski) ("the Wogan amendment is rational. I feel that [the] D.A. does deserve standing ...")
 
 
 12
 On May 27, 1988, the district attorney, relying on section 1108, filed a second motion to intervene and on June 3, 1988, sought a stay of implementation of the consent order pending disposition of the motion. The district attorney argued that section 1108 gave her "the right under Pennsylvania law to enforce continued institutional custody and admission of county prisoners." Thus, she asserted that she had a cognizable interest for intervention purposes in the "continued institutional custody and admission of county prisoners who are under state court orders of incarceration." The district attorney further asserted that her motion was timely and that her interest in the continued custody of county prisoners was not adequately represented by the city defendants. On June 6, 1988, the district court ordered expedited briefing on the intervention motion but denied the motion for a stay.
 
 
 13
 Though the district court in its opinion of June 6, 1988, did not rule on the intervention motion, it nevertheless considered it in connection with the motion for the stay. It viewed the intervention motion as implicating two stages of the litigation, one relating to merits and the other to remedy, an approach derived from Harris. See 820 F.2d at 599. The district court held that the district attorney was not likely to be successful in achieving intervention on the merits stage of the litigation, i.e., the unconstitutional conditions issue, as section 1108 did not alter her duties in the criminal justice system. Therefore, the analysis and result in Harris remained applicable.
 
 
 14
 However, the district court found that the district attorney was likely to be successful to the extent that she sought to intervene in the formation of the remedial terms of the settlement. Although section 1108 did not change her duties, it purported to grant her the right to seek equitable relief necessary to protect her interest in the continued custody of prisoners. The district court found that
 
 
 15
 [w]hile it remains true ..., that the District Attorney can have no interest in assuring the incarceration of persons under unconstitutional conditions, [her] cooperation in the remedial aspect of this decree would most likely be helpful to the court. Therefore, while the state legislature cannot create an interest after the fact, the continuing nature of the equitable relief provided for suggests the likelihood the District Attorney will be successful in some form of limited intervention to effectuate the purposes of the Consent Decree.
 
 
 16
 App. at 652-53.
 
 
 17
 Nevertheless, the district court denied the motion for the stay for reasons which we need not set forth.[5]
 
 
 18
 On June 13, 1988, the plaintiffs filed a response opposing the intervention request for any purpose and on June 15, 1988, the city defendants filed a response to the motion stating that intervention should be granted with respect to ongoing matters involving the release or non-admission of county prisoners. The district attorney's position was that she should be permitted to intervene only to participate in proceedings which may affect the release or non-admission of Philadelphia prisoners.
 
 
 19
 The district court denied the motion to intervene on January 14, 1991. While the district court found that the motion to intervene was timely, it concluded that section 1108, although intended by the legislature to confer standing on the district attorney to intervene, did not do so. The court found that the statute did not grant the district attorney any state law duties or rights supporting intervention. Thus, the district court did not address the question of whether the city defendants adequately represented the district attorney in the litigation.
 
 
 20
 On January 23, 1991, the district attorney appealed from the order denying intervention. On March 11, 1991, the district court approved a final proposed consent decree which modified the second consent decree the court earlier had approved. Even though the district attorney was not permitted to intervene, she was allowed to submit written objections to this proposed consent decree, which she did, and was granted argument on her objections. On March 12, 1991, the district attorney appealed from the order of March 11, 1991, and the plaintiffs have moved to dismiss that appeal, a motion we will grant. See Harris, 820 F.2d at 603 (one properly denied intervention cannot appeal the merits of a case).[6]HARRIS AND THE MOTIONS TO INTERVENE
 
 
 21
 In Harris, 820 F.2d 592, we upheld the denial of the district attorney's original intervention motion and on this appeal she starts from the assumption that we cannot question that decision on the basis of the law as it was when we decided that appeal.[7] Instead she relies on section 1108, which purports to confer automatic standing on the district attorney in prison litigation which might result in the release or non-admission of prisoners and can only be seen as a direct response by the legislature intended to overrule our opinion affirming the denial of the district attorney's first motion for intervention.
 
 
 22
 When the district attorney moved to intervene after the enactment of section 1108, the district court denied her motion as it was not convinced that section 1108 had given the district attorney sufficient legal interest which she previously lacked. The crux of the issue before us is whether the district court erred in finding that section 1108 did not somehow change the situation so as to warrant the grant of the motion to intervene. Accordingly, we will review our analysis and reasoning in Harris and then consider the district court's reasons for rejecting the second motion.
 
 Denial of the First Motion to Intervene
 
 23
 Under Fed.R.Civ.P. 24(a)(2), a person may intervene as of right if (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in litigation. Harris, 820 F.2d at 596. Although these requirements are intertwined, each must be met to support intervention as of right. Id. In Harris, we focused on the second requirement of Rule 24(a), whether the district attorney had a sufficient interest in the litigation "[b]ecause of its pervasive importance in the setting of the case." 820 F.2d at 596. We noted that an exact definition of the kind of interest justifying intervention remained elusive and that courts had described the level of interest required as "significantly protectable," "legally protectable," and "direct" as opposed to contingent or remote. Id. at 596-97.
 
 
 24
 The district attorney asserted that her interest in the litigation was implicated in her duties as a public official. Id. at 597. The district attorney is the public official charged with conducting in court all criminal and other prosecutions and advocates specific bail levels and appeals bail determinations with which she disagrees. The district attorney has the power to advocate sentences, to defend convictions, and to represent the state in challenges to the constitutionality of the state's penal statutes. In short, the district attorney is charged with enforcing the state's criminal statutes. Id. at 598.
 
 
 25
 The district attorney argued that these duties supported her right to intervene in this prison condition litigation because a limitation on prison population, which was a fundamental aspect of the consent decrees, would interfere with her prosecutorial powers. First, the district attorney argued that a prison cap would result in the release of inmates who had not posted the set bond or inmates who had not served full sentences. This, in turn, would result in wasted work and would hamper her ability to prosecute cases because prisoners released without posting bond would not appear for trial. Second, she argued that the prison cap might make it impossible for the city prisons to admit additional prisoners and would thus interfere with her duties because her function as a prosecutor would be rendered meaningless. Id. at 599.
 
 
 26
 We noted that the scope of the district attorney's interest was defined by her legal duties under Pennsylvania law and that if her rights and duties, as defined, would be affected directly by the litigation, the district attorney would have a sufficient interest to intervene as of right. Id. at 597. We considered the district attorney's motion to intervene in two stages; first, whether the district attorney had a right to intervene to oppose the claims of unconstitutional conditions in the prisons and second, whether she had the right to participate in the formation of a remedy. Id. at 599. We found that the district attorney had not proven an interest sufficient to allow intervention as of right at either stage.
 
 
 27
 We found on the merits phase of the constitutional claim that the city defendants, not the district attorney, were responsible for managing the prison system. More importantly, the city defendants could be liable if conditions were found to be unconstitutional. On the other hand, the district attorney had no legal duties or powers with regard to prison conditions and could incur no liability if conditions were found unconstitutional. Thus, her participation in the liability stage would not contribute to an understanding of the issues in the litigation and accordingly she had no interest entitling her to litigate the merits of the claim of unconstitutional conditions. Id. at 599-600.
 
 
 28
 We also found that the district attorney did not have a sufficient interest to intervene in the settlement or remedy phase. The consent decree proposed to the district court would not alter any of the duties of the district attorney and would not prevent her from performing her statutory duties. In particular, the district attorney could not be held in contempt for not carrying out the terms of the decree.
 
 
 29
 Although we recognized that the consent decree could affect the district attorney's powers in that certain detainees might not appear for trial, we found that this effect was "incidental" to and a "by-product" of the decree and was not enough to entitle the district attorney to intervene as of right. Id. at 601-02. We indicated that the district attorney's interest in the litigation was of a general nature and not within the scope of her official duties. Id. Therefore, we found that the district court did not abuse its discretion in denying the district attorney's motion to intervene. Id. at 603. Because we disposed of the intervention motion on this interest analysis, we did not consider whether the district attorney's motion was timely or whether any interest she had was being adequately represented by the city defendants. Id.
 
 
 30
 Finally, we noted that, although the district attorney was not entitled to intervene as of right, the district court acted appropriately in permitting her to be heard on the terms of the consent decree. We noted that allowing persons to appear in court, either as friends of the court or as interveners for a limited purpose, may be advisable where these parties can contribute to the court's understanding of the consequences of the proposed settlement. Id.
 
 
 31
 Denial of the Second Motion to Intervene--Section 1108
 
 
 32
 The district court, in rejecting the second motion to intervene,[8] found that section 1108 stated in conclusory terms that the district attorney had legal standing in litigation involving the release or non-admission of prisoners and provided that she could seek equitable relief to protect that interest. However, the court found that:
 
 
 33
 [t]he statute fails to change the role of the District Attorney sufficiently to mandate [her] intervention. The considerations that were dispositive of the issue in the Court of Appeals remain unchanged: the District Attorney still has no legal duty or power regarding prison conditions or administrative responsibilities over the Philadelphia prisons; the District Attorney does not have the responsibility of overseeing Philadelphia's criminal justice system; and the District Attorney would not be subject to liability if conditions were found to be unconstitutional in the Philadelphia prisons. Furthermore, Section 1108 does not impose any new legal duties or bestow any new powers on the District Attorney that are affected by the release and non-admission of pretrial detainees. The statute does not purport to alter the 'boundaries that the Commonwealth has chosen to draw as to the responsibilities of its public officials.'
 
 
 34
 App. at 683-84 (quoting Harris, 820 F.2d at 602).
 
 
 35
 The district court cited the legislative history of section 1108 as indicating that it was passed in an attempt to overturn our decision in Harris, 820 F.2d 592, but "without substantially altering the District Attorney's responsibilities." App. at 684-85. The district court noted that the Pennsylvania legislature could have granted new legal duties or responsibilities to the district attorney that might be directly affected by the continued application of the release and non-admission provisions of the consent decrees and that such added duties could confer an interest sufficient to sustain intervention. However, the court stated that it did "not believe that the Pennsylvania legislature ha[d] in fact changed the District Attorney's responsibilities or given [her] a 'legal interest' in the Harris litigation within the meaning of Rule 24 as interpreted by the Court of Appeals."[9] The district court, however, found that the district attorney's second intervention motion was timely filed. The district court did not specifically consider the question of whether any interest the district attorney might have was not being adequately represented by the city defendants. However, the district court did adopt the reasoning from its earlier order and opinion in which it denied the first intervention motion and in which it found that any interest the district attorney had was being adequately represented by the city defendants. See app. at 688 ("[f]or the reasons stated, and the reasons in the court's opinion denying the District Attorney's original motion to intervene, later affirmed on appeal, the District Attorney's motion is denied.")
 
 CONTENTIONS ON APPEAL
 
 36
 On appeal, the district attorney argues that the district court erred in concluding that section 1108 did not confer on her an interest sufficient to warrant intervention of right. Her basic argument is that the district court erred in finding that section 1108 did not alter the situation vis-a-vis the first motion to intervene. That motion to intervene, as we noted in Harris, 820 F.2d at 597, was based on the district attorney's legal duties in the criminal justice system. The district court found, and we agreed, that the district attorney's duties were not sufficiently connected to prison conditions to warrant intervention of right.
 
 
 37
 The district attorney's position here is that section 1108 conferred rights on her sufficient to sustain her motion to intervene. The district attorney argues that a party's rights being affected via an action warrant intervention just as do a party's duties being affected. Thus, the district attorney argues that the district court erred in focusing on the fact that section 1108 did not confer any new responsibilities on her which might be implicated by the consent decree. Rather, according to the district attorney, the district court should have recognized that section 1108 conferred rights on her which would be directly implicated via the consent decree.
 
 
 38
 The appellees' (both the plaintiffs' and the city defendants') position is, of course, to the contrary. The appellees argue that section 1108 does not make a clear-cut change which would warrant the district court in finding an interest supporting intervention. The appellees urge that the same reasons for denying intervention in Harris remain applicable and that intervention is still not warranted. In fact, they argue that this court is bound by Harris. Our analysis of section 1108 proves appellees' argument the better one.
 
 ANALYSIS
 
 39
 Section 1108 grants three possible "rights" to the district attorney. We repeat the section to demonstrate the rights:
 
 
 40
 The district attorney shall receive written notice of, and shall have automatic standing and a legal interest in, any proceeding which may involve the release or nonadmission of county prisoners, delinquents or detainees due to the fact, duration or other conditions of custody. In addition to the district attorney's rights in such a proceeding, the district attorney may seek any equitable relief necessary to protect the district attorney's interest in the continued institutional custody and admission of county prisoners, delinquents or detainees.
 
 
 41
 First, section 1108 gives the district attorney the "right" to receive written notice of proceedings affecting release or non-admission of prisoners. Second, it purports to give the district attorney a legal interest in such proceedings. Third, it provides that the district attorney may seek equitable relief necessary to protect her interest in continued prisoner custody. An analysis of these three "rights" shows that the legislature's attempt at requiring the district court to grant the district attorney intervention as of right must fail.[10]
 
 
 42
 The first "right"--that of notice--in no way supports intervention. There has never been a claim that the district attorney did not have notice of the prison litigation underlying this case. Furthermore, the mere granting to the district attorney of the right to receive notice has no effect on the district attorney's performance of her duties in the criminal justice system. Second, even viewing the notice requirement in terms of rights as opposed to duties, the right to notice is not material in an analysis of actual powers. There is simply not enough substance to that right to give the district attorney a substantial, protected interest in the litigation.
 
 
 43
 Second, the automatic standing purportedly conferred by section 1108 cannot be the basis for intervention. Whether the district attorney's legal duties as defined by Pennsylvania law are sufficient to give the district attorney the right to intervene is a question of federal law. Harris, 820 F.2d at 597 n. 7. Simply stating that the district attorney has a legal interest does not make it so. The purported legal interest is still subject to the interest analysis that we used in Harris. Utilizing this analysis, section 1108 makes no changes that warrant finding an interest where none was found before.
 
 
 44
 Section 1108 does not change the fact, dispositive in Harris, that the district attorney's role in the Philadelphia criminal justice system does not involve prison conditions, the issue in this suit. Rather, the district attorney has the power and duty to represent the Commonwealth in the enforcement of its criminal laws. This includes the power and duty to conduct all criminal prosecutions, to advocate bail levels, to advocate sentences, to defend convictions, and to represent the Commonwealth in challenges to the constitutionality of its penal statutes. Harris, 820 F.2d at 598. It does not include any duty with respect to the conditions of the prisons, as that responsibility continues to belong to the Department of Public Welfare and the Board of Trustees of the Philadelphia Prison System. Of course, as this case illustrates, matters involving duration or conditions of custody "may involve" the district attorney and may affect the release or non-admission of prisoners. That, however, is not enough to warrant standing. In Harris, we recognized that the proposed consent decree might have an incidental effect on the custody and non-admission of prisoners. Nonetheless, we found that the district attorney did not have an interest warranting intervention. Section 1108 does nothing to augment that incidental effect. The effect which the release or non-admission of prisoners may have is still incidental to the crux of the underlying litigation, which involves the constitutionality of prison conditions.
 
 
 45
 Section 1108 does not make the district attorney liable for prison conditions; nor does it put her in a position in which she will be the subject of injunctive relief or a contempt citation. These were two major points in Harris underlying our determination that the district attorney did not have a sufficient interest to warrant intervention. Section 1108 does nothing to change them.
 
 
 46
 The Pennsylvania legislature could have utilized section 1108 to confer on the district attorney duties or responsibilities sustaining her right to intervene by making the district attorney responsible for overseeing prison conditions, but it did not do this. Rather, both before and after the enactment of section 1108, the district attorney was and is responsible for prosecution but was not and is not responsible for the conditions of prisoners' incarceration. These conditions are the subject of this suit and the district attorney's role in the criminal justice system has no impact on the prison conditions issue.
 
 
 47
 Finally, section 1108 provides that the district attorney may seek equitable relief "necessary to protect the district attorney's interest in the continued institutional custody and admission of county prisoners, delinquents or detainees." This provision cannot support intervention. First, it assumes that the district attorney has an interest warranting intervention. As discussed above, the district attorney did not have such an interest before the adoption of section 1108 and that section does not purport to change the interest that she had before its passage. Second, even given the district attorney's general interest in the litigation, see Harris, 820 F.2d at 602-03 (the district attorney's interest in the litigation is of a general nature), the fact that the district attorney might seek equitable relief to protect that general interest does not per se mean that the district attorney has an interest in the litigation warranting intervention.
 
 
 48
 On this point the district attorney refers to a ruling by the Pennsylvania Commonwealth Court which she claims relied on section 1108 to support the district attorney's right to seek a peremptory mandamus order. In Castille v. Department of Public Welfare, No. 2533 C.D.1988, the district attorney filed a complaint in mandamus and a motion for a peremptory mandamus against the Department of Public Welfare. As she characterizes that action, the district attorney, "based upon the rights granted by Section 1108" sought an order compelling the department to accept promptly adjudicated delinquents committed to state treatment facilities by the Philadelphia family court. See brief at 19; app. at 215.
 
 
 49
 In response the department contended, inter alia, that the district attorney lacked standing to assert these claims and that the district attorney did not have a legal right to the requested relief. But, as the district attorney explains, "[t]he Commonwealth Court nevertheless entered an order partially granting the motion for peremptory mandamus and ordered the Department 'to make available equivalent services to children in equivalent facilities forthwith.' " Brief at 19; app. at 215-16.
 
 
 50
 According to the district attorney, the issuance of the peremptory mandamus "constitutes a clear recognition of the District Attorney's rights to compel institutional custody and care under Section 1108." Brief at 19-20. The district attorney argues that in order to issue the mandamus, the court must have found that she had a right to seek mandamus under section 1108. "Thus, the only Pennsylvania Court to address the issue of whether Section 1108 grants the District Attorney any state law rights has implicitly ruled, by the grant of a peremptory mandamus, that the District Attorney had a clear legal right to compel institutional custody for juvenile delinquents." Brief at 20. [Emphasis added].
 
 
 51
 As to the issue before this court, the district attorney asserts that her right, via section 1108, to seek to compel institutional custody of prisoners through a mandamus action would be impaired by the remedies presently encompassed in the proposed consent decree. That is, the district attorney's right to pursue a mandamus action to compel Philadelphia to provide institutional facilities for pretrial prisoners ordered detained in lieu of bail, which prisoners can only be held in Philadelphia jails, would be impaired by a federal order requiring the release, or non-admission, of prisoners. Brief at 21.
 
 
 52
 The appellees make two arguments in response to the district attorney's reliance on Castille. First, the appellees (specifically the plaintiffs), point out that the memorandum and order issued in Castille nowhere mention section 1108. Thus, it is not clear that the Commonwealth Court found that section 1108 granted the right alleged by the district attorney. It seems altogether possible that the court simply assumed that the right to seek mandamus existed separate from section 1108, which would explain why section 1108 is not mentioned in the Commonwealth Court's order partially granting peremptory mandamus.
 
 
 53
 Second, the appellees assert that nothing in the consent decree in the case affects the power of the district attorney to seek mandamus under section 1108 to compel institutional custody of all county prisoners. The district attorney may petition a state court to compel the city to perform a legally mandated function involving prisoner custody, but that ability is subject to constitutional restraints. Therefore, as the appellees see it, that right, to the extent it exists, remains and is unaffected by the proposed consent decree except that the decree sets forth the constitutional parameters of the right. However, the appellees contend that the district attorney does not have a right to intervene merely because she may seek mandamus to compel incarceration of prisoners.
 
 
 54
 We agree with the appellees. The right to seek equitable relief purportedly granted by section 1108 does not change the applicability of Harris and its result to the present intervention motion. It does not change the dispositive facts in this case; the district attorney's role in the criminal justice system does not involve prison conditions; the district attorney is not subject to liability or a contempt order for violating the constitutional rights of prisoners for prison conditions and any effect on the district attorney's role in incarcerating prisoners caused by the consent decree remains incidental. Most importantly, if the consent decree has any effect on the district attorney's right to seek equitable relief, such effect is still incidental. The consent decree does not specifically remove any such right. Rather, if it does anything, it imposes constitutional limitations on the right in that the district attorney cannot compel custody under unconstitutional conditions.
 
 
 55
 Thus, just as the conclusory attempt in section 1108 to confer standing cannot create the necessary interest to warrant intervention, the provision purporting to confer the right to seek equitable relief to protect the district attorney's interest also does not alter the analysis and result reached by this court in Harris.[11]
 
 CONCLUSION
 
 56
 We will affirm the order of January 14, 1991, appealed at No. 91-1068, we will dismiss the appeal at No. 91-1194, and we will vacate our order of partial stay of August 15, 1991.
 
 
 57
 ALDISERT, Circuit Judge, dissenting.
 
 
 58
 I totally disagree with the majority.
 
 
 59
 I would conclude that the Pennsylvania legislature has conferred the necessary legal interest upon the District Attorney of Philadelphia to intervene in these proceedings, that the district court abused its discretion in not permitting intervention, that only the portion of the consent decree entered by the district court pertaining to the release of certain pretrial detainees be vacated and that the stay previously entered by this court remain in effect until the District Attorney has had the full opportunity to participate in the district court proceedings as an intervenor. Accordingly, I dissent.
 
 I.
 
 60
 In the scheme of things, it is comfortable and tidy to take the position adopted by my colleagues of the majority. That position does not upset any procedural apple carts. It does not disturb any component of a very delicate consent decree, an agreement ultimately fashioned by a skillful, innovative and extremely patient district judge who labored for nine long years to summon warring factions to the settlement table, to compel them to negotiate in good faith and to painstakingly bring about a long-range, complicated, albeit partial, cure to the fulminating cancer of urban prison overcrowding.
 
 
 61
 The disease is not limited to Philadelphia. The problem is nationwide. The solutions have not come forth voluntarily; they have emanated from scores of lawsuits such as this, where inmates have charged that contemporary jail and prison conditions violate the protections of the Eighth Amendment made applicable to the states through the Fourteenth. The normal political processes that allocate finances to public functions in cash-poor municipalities have been unable to solve the problem. The brute fact is that there are no political action committees espousing the cause of those who are incarcerated and no groundswell of public opinion demanding that substantial public funds be committed to improving the physical well-being of those accused of violating society's rules.
 
 
 62
 Consequently, federal district judges have been anointed as political power brokers to perform the legislative and executive responsibilities normally entrusted to municipal, county and state office holders. What these state and local officials have refused to do voluntarily, they ultimately agree to do, at least to some extent, as the result of the wheedling and cajoling of the judges who constantly hold over their heads a Sword of Damocles. It is a sword feared by the inmates and public officials alike: The inmates fear that the court will find no constitutional violation; the public officials fear that a post-litigation decree will cost more to implement than one achieved through settlement. Thus, in recent years, the courts have formed an extensive body of prison confinement jurisprudence, essentially constructed from consent decrees.
 
 
 63
 The success of these decrees has been limited by their level of public acceptance. Forming the agreements has been "only half the fun"; implementing them through higher taxes or by constricting other public services can lead to serious political problems. Thus, although the solution has been achieved by consent of the parties, rather than by post-trial decree, it is critical that the general public believe that the parties have considered the public's diverse interests, at least those represented by elected officials, in hammering out the agreement. When this does not take place, the agreement is suspect.
 
 
 64
 From a political science standpoint, public opinion poses a serious threat to the vigorous effort by the inmates and city officials to exclude the District Attorney from participating in an agreement providing for the release of a substantial number of pretrial detainees, especially in view of the undisputed fact that such release will result in a substantial, if not formidable, number of defendants failing to appear at trial. Given the gravity of this concern, the anxiety expressed by the District Attorney cannot be considered illegitimate. To exclude the District Attorney as a fullfledged partner in the settlement dialogue is to threaten the eventual public acceptance of this consent decree.
 
 
 65
 The defendant city officials in this case robustly declare that the District Attorney has no role in this litigation because the interests of Philadelphia's citizens in public safety and effective criminal justice are adequately protected by the present parties. Counsel insisted at oral argument that city officials had fully considered and defended these interests in the suit and had not agreed to this decree merely for reasons of fiscal expedience. Tr. at 67-71. These abundant assurances call to mind the words of Shakespeare: "The lady doth protest too much, methinks."[1] Exclusion of the District Attorney can only serve to diminish public confidence in the consent decree.
 
 
 66
 Even worse, should a pretrial defendant released under the plan commit some terrible crime, the public fallout would be nuclear. I raise the specter of another Willie Horton-type incident with some trepidation, because this argument may seem to appeal to unreason and prejudice. But we cannot disallow the possibility that such an event would undermine public acceptance of the consent decree, which, as stated above, is critical to the effective functioning of judicially brokered agreements of this type.
 
 
 67
 Thus, from the standpoint of the Philadelphia public's ultimate acceptance of the consent decree, I believe that the parties to the agreement, and especially the district court, erred grievously in opposing and denying the limited intervention sought by the District Attorney in these proceedings.
 
 
 68
 I readily admit that political science concepts are not sufficient to control the outcome of this case. Legal precepts must and should control. Because this case is but another increment to the growing body of prison-capacity jurisprudence concocted by consent decrees, however, I deem these observations important, particularly because experience informs us that this is not the last that this court will hear of the consent decree entered in this case. And even casual research produces numerous citations to other consent decree cases that have occupied our repeated attention.
 
 
 69
 Turning now to the legal precepts that should govern this case, I conclude that the issue is not even close. The district court erred as a matter of law in thumbing its nose at the Pennsylvania legislature.
 
 II.
 
 70
 This is merely a case of statutory (or rule) construction. We are required to decide whether the District Attorney qualifies as an intervenor of right under Rule 24(a)(2), Fed.R.Civ.P., which provides:
 
 
 71
 (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 72
 We do not write on a clean slate here. This court has already announced the law of the case. In Harris v. Pernsley, 820 F.2d 592 (3d Cir.1987), we set forth the following legal precepts that controlled the issues then as well as those before us now:
 
 
 73
 1. "The scope of [the District Attorney's] interest is defined by the scope of [her] legal duties under Pennsylvania law." Id. at 597 (footnote omitted).
 
 
 74
 2. "Whether the legal duties as defined by Pennsylvania law are sufficient to give the District Attorney the right to intervene is, however, a question of federal law." Id. at 597 n. 7.
 
 
 75
 3. "[T]o have an interest sufficient to intervene as of right, 'the interest must be a "legal interest as distinguished from interests of a general and indefinite character." ' " Id. at 601 (quoting United States v. American Tel. & Tel. Co., 642 F.2d 1285, 1292 (D.C.Cir.1980)).
 
 
 76
 Applying these precepts against the backdrop of Pennsylvania law as it existed at that time, we held that the Commonwealth of Pennsylvania had not conferred upon the District Attorney the right to intervene:
 
 
 77
 We must respect the boundaries that the Commonwealth has chosen to draw as to the responsibilities of its public officials. But we must decline to equate the District Attorney's function as the spokesperson for Pennsylvania's interest in criminal prosecutions with the responsibility for policing the entire criminal justice system. Although we agree with the District Attorney that the decree may result in some individuals not appearing for their scheduled trial dates and some people not having to post bond before being released, this by-product of the decree is not sufficient to give the District Attorney the right to become a party to any consent decree entered in this case....
 
 
 78
 ....
 
 
 79
 We therefore conclude that the District Attorney has not asserted a sufficient interest to intervene in this action as of right.
 
 
 80
 Id. at 602.
 
 
 81
 We also concluded that in 1987 as a matter of Pennsylvania law
 
 
 82
 [t]he District Attorney ... has no legal duties or powers with regard to the conditions of the Philadelphia prison system ... [and] does not have the right to prevent the City from effectuating its reasoned judgment that it is best not to litigate the action. Otherwise stated, the District Attorney has no interest entitling him to litigate the plaintiffs' contention that the conditions in the Philadelphia prison system are unconstitutional.
 
 
 83
 Id. at 600.
 
 
 84
 This was the state of Pennsylvania law on May 15, 1987, when we handed down our decision. One year later, almost to the day, the Pennsylvania legislature changed the law by enacting 18 Pa.Cons.Stat.Ann. § 1108, effective May 24, 1988. This change in the substantive law of Pennsylvania compels us to change our view on the District Attorney's right to intervene in this case.
 
 III.
 
 85
 In examining the new statute, we emphasize what we previously said in Pernsley that the scope of the District Attorney's interest is "defined by [her] legal duties under Pennsylvania law." 820 F.2d at 597 (footnote omitted). As conceded by the majority, the legislative history discloses that section 1108 was intended to overrule Pernsley's denial of the right to intervene. Representative Wogan, the author of the amendment, stated:
 
 
 86
 [T]his is a commonsense amendment. It is reasonable to assume that our D.A.'s, who, it is already recognized, have the power to advocate criminal sentences, the power to defend convictions in both State court actions and Federal habeas corpus actions, and the power to represent the Commonwealth generally in challenges of the constitutionality of the State's penal statutes, should also have the authority to intervene in lawsuits involving the release of county prisoners.
 
 
 87
 Pennsylvania Legislative Journal--House, Nov. 24, 1987, at 1951; App. at 103. The merits of the amendment were energetically debated on the floor, and arguments were presented on both sides. See id. (statement of Rep. Freind) (arguing that District Attorney should be permitted to intervene to challenge constitutionality of consent decree); id. (statement of Rep. Evans) (arguing that District Attorney has had sufficient input into litigation and should not be authorized to intervene); id. at 1952; App. at 104 (statement of Rep. Kosinski) (arguing that District Attorney should be allowed to intervene in order to press public safety concerns raised by consent decree); id. at 1955; App. at 108 (statement of Rep. Fattah) (arguing that consent decree's release provisions would not unduly threaten public safety and that District Attorney should not be permitted to intervene). Following this debate, the House agreed to the amendment by an overwhelming majority of 175 to 22. Id. at 1955-56; App. at 108-09.
 
 The statute provides:
 
 88
 District attorneys' standing and interest in prisoner litigation
 
 
 89
 The district attorney shall receive written notice of, and shall have automatic standing and a legal interest in, any proceeding which may involve the release or nonadmission of county prisoners, delinquents or detainees due to the fact, duration or other conditions of custody. In addition to the district attorney's rights in such a proceeding, the district attorney may seek any equitable relief necessary to protect the district attorney's interest in the continued institutional custody and admission of county prisoners, delinquents or detainees.
 
 
 90
 18 Pa.Cons.Stat.Ann. § 1108 (Purdon 1991) (emphasis added).
 
 
 91
 But this mandate of the Pennsylvania legislature conferring a legal interest as a matter of state law in the proceeding at bar was not enough for the plaintiffs, the City or the district court. In a truly fascinating expression, the district court concluded that because the legislature did not confer upon the District Attorney a "legal duty or power regarding prison conditions or administrative responsibilities over the Philadelphia prisons," the legislature lacked the power and authority under state law to grant or bestow a legal interest in any proceeding which may involve the release or nonadmission of county prisoners. D.C.Mem. & Order at 5-6; App. at 683-84. I call this utterance and conclusion "fascinating" because it flies far beyond the outer limits of mere sophistry or fallacious reasoning and becomes a federal judicial fiat rendering a state statute null and void. No one has alleged, in either the district court or this court, that section 1108 is unconstitutional under the Pennsylvania or federal constitutions, and unless and until this statute is declared unconstitutional--either because it violates a specific substantive provision or because it violates the Supremacy Clause of the United States Constitution--we must give it full force and effect.
 
 
 92
 The Judiciary Act of 1789 established state laws as the rules of decision in federal courts, and this statutory command remains in force today. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 71, 58 S.Ct. 817, 818, 82 L.Ed. 1188 (1938). Moreover, 28 U.S.C. § 1652 provides:
 
 
 93
 The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decisions in civil actions in the courts of the United States, in cases where they apply.
 
 
 94
 There was no contention in the present case that section 1108 offended concepts of substantive due process or equal protection or any other constitutional provision. There was no argument that failure to bestow upon the District Attorney the responsibility of overseeing Philadelphia's criminal justice system or power over Philadelphia's prisons made the statute unconstitutional under the rational basis test, or intermediate or strict scrutiny, or any other standard we normally apply in testing the constitutionality of a validly enacted state or federal statute. There was no decision by the district court or any other court declaring section 1108 unconstitutional.
 
 
 95
 Neither was any conflict with a federal statute or rule presented. The question whether a sufficient interest exists to permit intervention under Rule 24(a)(2) is a question of federal, not state law, as the majority correctly observe. In order to intervene, the District Attorney must satisfy the three elements of Rule 24(a)(2): timeliness, an interest in the litigation and inadequacy of representation.
 
 
 96
 The conflict perceived by the majority centers on the showing of an interest in the litigation. The rule is general, and this court has recognized that "what constitutes such an interest 'defies a simple definition.' " Pernsley, 820 F.2d at 596 (quoting Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Prods., Inc., 725 F.2d 871, 874 (2d Cir.1984)). In resolving the question, this court held in Pernsley that we must look to the District Attorney's duties as a public official, which are set out by Pennsylvania statute. Id. at 597.
 
 
 97
 This is where the majority depart from Pernsley. The majority hold that a statutory statement of a public official's legal interest is insufficient to confer standing to intervene, absent some additional change in the scope of the official's daily responsibilities. The source for this rule certainly cannot be found in Pernsley, which rested on a careful consideration of the District Attorney's statutory authority and responsibilities. Id. at 597-99.
 
 
 98
 This, apparently, is also where the majority perceive a conflict between section 1108 and Rule 24(a)(2). The majority seem to believe that section 1108 circumvents Rule 24(a)(2) by granting the District Attorney a right to intervene, notwithstanding the requirements of the rule. Thus, by stating that the right to intervene is a question of federal law, the majority declare that the Pennsylvania legislature's statutory creation of a legal interest has no effect in the federal courts.
 
 
 99
 I cannot agree. The legislature has not attempted to supplant the requirements of timeliness and inadequacy of representation contained in Rule 24(a)(2). The legislature has spoken only to the existence of a legal interest, which it is manifestly competent to do. We are bound, as was this court in Pernsley, to "respect the boundaries that the Commonwealth has chosen to draw as to the responsibilities of its public officials." Id. at 602. And when the Commonwealth has by statute assigned the District Attorney a legal interest in proceedings, we must recognize that interest as surely as we must follow any state statute, until that statute is declared invalid under the Constitution.
 
 
 100
 Nothing of the kind has transpired here. Instead, we saw a federal district judge refuse to recognize the unambiguous language of a state statute granting standing and conferring a legal interest. When this was done, we did not witness the traditional judicial process at work. In its place we saw the exercise of the type of naked judicial power that I thought went out with the demise of the kadi, the ancient Moslem magistrate who dispensed justice under a palm tree, beholden to no authority but the dictates of his own will. The district court sent a state statute to the gallows without benefit of clergy.
 
 
 101
 The bottom line is clear and irrefragable: "We must respect the boundaries that the Commonwealth has chosen to draw as to the responsibilities of its public officials." Id. Whatever had been the extent of the District Attorney's rights, duties or responsibilities under Pennsylvania law prior to 1988, the passage of section 1108 has now given that public official "rights": "automatic standing and a legal interest in, any proceeding which may involve the release or nonadmission of county prisoners, delinquents or detainees due to the fact, duration or other conditions of custody." The unambiguous words of that statute must be given full force and effect unless and until a court of competent jurisdiction declares the statute to offend either the state or federal constitution.
 
 
 102
 The arguments advanced by the plaintiffs and the City before us--that the District Attorney has no legal duty or power regarding prison conditions or administrative responsibilities over the Philadelphia prison system or the responsibility of overseeing the city's criminal justice system--may be germane to a challenge to the statute's constitutionality, but they are irrelevant in the case before us.
 
 IV.
 
 103
 Why then have the district court and my colleagues of the majority been hospitable to these contentions and willing to cut jurisprudential corners? The answer is obvious. We are faced with a Philadelphia prison system that, arguably at least, cries out for modernization and physical improvement. As stated before, consent decrees form the bedrock of federal court prison conditions jurisprudence. The district court has labored nine long years to bring about a final settlement between counsel for the inmates and city officials, which settlement takes the form of a consent decree that addresses long-range as well as immediate problems. For over five years, the District Attorney has been struggling to participate as a full party in this case, filing her first motion to intervene on August 19, 1986.
 
 
 104
 I think that it is the fear of unravelling the fragile fabric of this agreement that impels the lively and vigorous opposition of the parties. I am persuaded that a ringing endorsement of the basic contours of the settlement also motivates the actions of the district court and my colleagues of the majority. They are convinced that the ultimate objectives of the decree are desirable and congruent with the best ideals of public policy. So am I, except that I would be far more comfortable if the District Attorney were made a party and full participant in this litigation, as section 1108 requires.
 
 
 105
 I differ with them only to the extent that I will not take jurisprudential shortcuts to achieve this result and cheapen the rule of law along the way.
 
 
 106
 Accordingly, I dissent.
 
 
 
 [1]
 Rule 24(a) provides:
 Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 [2]
 The district attorney has not appealed from the denial of the original motion for permissive intervention and thus it is not an issue in this appeal
 
 
 [3]
 Ronald Castille was the district attorney who filed the original motion to intervene but Lynne Abraham is now the district attorney. As a matter of convenience we are treating this appeal as though Abraham has been the district attorney throughout this litigation
 
 
 [4]
 Unsuccessful litigation challenging the validity of the statute on grounds not germane here was brought in the state court. See Ritter v. Commonwealth, 120 Pa.Commw. 374, 548 A.2d 1317 (1988), aff'd, 521 Pa. 536, 557 A.2d 1064 (1989)
 
 
 [5]
 The district attorney relies on this statement to show that she has a right sufficient to sustain intervention but we reject that contention. The statement regarding the likelihood of success in intervention with respect to the remedy was made on a ruling on the motion for a stay, a context very different from that in which the district court eventually denied the second motion to intervene. In addition, the district court stated that the district attorney might be successful in achieving "some form of limited intervention." In fact, in practical terms, the objector status afforded the district attorney achieved that result. See also app. at 686, n. 3 where the district court, in denying the district attorney's second motion to intervene, made a similar observation. In any event, in view of Fed.R.Civ.P. 54(b), the district court was not bound by its original observations
 
 
 [6]
 The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Subject to the circumstance that the appeal at No. 91-1194 must be dismissed, we have jurisdiction under 28 U.S.C. § 1291. We review the order denying intervention under an abuse of discretion standard but will reverse if we conclude that the district court has applied an improper legal standard or reached a decision we are confident is incorrect. Harris, 820 F.2d at 597
 
 
 [7]
 This is undoubtedly so, for quite aside from considerations of the law of the case, our internal operating procedures require that we regard Harris as binding unless its result cannot withstand an intervening change in the law from some source other than this court
 
 
 [8]
 In her second motion to intervene, the district attorney sought intervention only to participate in the formation of settlement and not in the litigation over the merits of the underlying constitutional challenge. See app. at 233 ("[P]etitioner does not wish to intervene to defend the constitutionality of [prison] conditions.... [P]etitioner wishes to intervene to participate only in those stages of the proceedings, including but not limited to hearings on the choice of remedies to correct any proven unconstitutional conditions....")
 
 
 [9]
 The district court also noted that the district attorney's argument had been previously rejected in a federal court action concerning conditions at the Philadelphia Youth Study Center. Although that opinion was later vacated, the district court noted its belief that the court's opinion and reasoning on the district attorney's section 1108 argument were correct
 
 
 [10]
 It should be noted that the motion to intervene is founded on Rule 24(a)(2), and not Rule 24(a)(1). Rule 24(a)(1) provides that intervention of right exists when a statute of the United States confers an unconditional right to intervene but the rule does not provide for intervention of right when a state statute confers an unconditional right to intervene. Absent a federal statute conferring an unconditional right to intervene, a party's right to intervention under Rule 24(a) is subject to the analysis determined by subsection (2). Thus, the party must make a timely motion and have a sufficient interest in the litigation, which might be impaired by a disposition in the litigation and is not adequately represented by existing parties. And although the proposed intervenor's interest may be shaped by state law, as in this case by the district attorney's legal duties under state law, whether these duties sustain intervention is a matter of federal, not state, law
 
 
 [11]
 As an alternative ground for affirming, the plaintiffs contend that the district court abused its discretion in holding that the district attorney's motion to intervene was timely. In view of our result, we do not reach that issue
 
 
 [1]
 Hamlet, act 3, sc. 2, line 242