**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

KEVIN COOPER; ALBERT
GREENWOOD BROWN; RONALD
LEE DEERE; ROBERT G. FAIRBANK;
ANTHONY J. SULLY,
        *Plaintiffs-Appellees*,

v.

GAVIN NEWSOM; SCOTT KERNAN,
Secretary of the California
Department of Corrections and
Rehabilitation; RONALD DAVIS,
Warden of San Quentin State
Prison,
        *Defendants-Appellees*,

v.

SAN BERNARDINO COUNTY
DISTRICT ATTORNEY; SAN MATEO
COUNTY DISTRICT ATTORNEY;
RIVERSIDE COUNTY DISTRICT
ATTORNEY, Applicants in
Intervention; Proposed Intervenors,
Movants-Appellants.

No. 18-16547

D.C. Nos.
3:06-cv-00219-RS
3:06-cv-00926-RS

OPINION

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, District Judge, Presiding

Argued and Submitted September 16, 2020
San Francisco, California

Filed September 16, 2021

Before:  William A. Fletcher, Danielle J. Forrest[*],and
Lawrence VanDyke, Circuit Judges.

Opinion by Judge W. Fletcher;
Partial Concurrence by Judge Forrest;
Dissent by Judge VanDyke

---

[*] Formerly known as Danielle J. Hunsaker.

# SUMMARY[**]

### Prisoner Civil Rights

The panel affirmed, in part, the district court's denial of a motion to intervene by the District Attorneys of San Bernardino, San Mateo, and Riverside Counties, and dismissed, in part, the District Attorneys' appeal in an action by death row inmates seeking a stay of execution on the ground that California's execution protocol violates the Eighth Amendment.

In 2006, California death row inmate Michael Morales brought suit in federal district court against the Governor of California, the Secretary of the California Department of Corrections and Rehabilitation, and the Warden of San Quentin State Prison. Morales sought a stay of execution on the ground that California's execution protocol violated the Eighth Amendment. The district court stayed the execution, and numerous death row inmates subsequently intervened as plaintiffs. After the State promulgated a new execution protocol in 2018, the District Attorneys of San Bernardino, San Mateo, and Riverside Counties sought to intervene as defendants. The district court denied intervention, and the District Attorneys timely appealed.

While the District Attorneys' appeal was pending, newly elected Governor Newsom withdrew California's new execution protocol, placed a moratorium on executions, and closed the execution chamber at San Quentin. Pursuant to a

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

settlement among the parties, plaintiffs voluntarily dismissed their suit subject to specified conditions.

The panel first held that this appeal was not mooted by Governor Newsom's Executive Order or by the stipulated voluntary dismissal. The panel held that defendants had failed to carry their burden of demonstrating that the challenged conduct could not reasonably be expected to start up again. Nothing prevented Governor Newsom, or a future Governor, from withdrawing the Executive Order and proceeding with preparations for executions. It was thus entirely possible that in the future, defendants would seek to resume executions in California, and would seek to do so under the current or a successor protocol.

The panel also held that the parties' stipulation did not render the appeal moot. First, the panel determined that this suit could be revived upon the occurrence of any of the three events specified in the Reinstatement Stipulation, and therefore the stipulated voluntary dismissal effectively functioned as a stay. Second, even if the suit was not revived upon the occurrence of any of the three events, if the panel were to hear the current appeal and reverse the district court's denial of intervention, the District Attorneys could move in the district court under Fed. R. Civ. P. 60(b) to seek relief from the order of dismissal that was entered pursuant to the stipulation.

On the merits of the appeal, the panel held that the district court properly denied intervention as of right under Fed. R. Civ. P. 24(a) because the District Attorneys had not shown a significant protectable interest in the litigation. The panel stated that California law does not authorize the District Attorneys to defend the State against constitutional

challenges to execution protocols. There was nothing in the District Attorneys' general interest in executing condemned inmates, nor in their more specific interest in requesting execution dates, that amounted to a significant protected interest in the *Morales* litigation, which concerned only the method by which the State may perform executions. The District Attorneys have neither the authority to choose a method of execution, nor the authority to represent the state entity that makes that choice.

The panel also held that the district court did not abuse its discretion in denying permissive intervention under Fed. R. Civ. P. 24(b) on the grounds that (1) there was no common question of law or fact between the District Attorneys' claim or defense and the main action within the meaning of Rule 24(b); and (2) intervention by the District Attorneys would delay the already long-drawn-out litigation, particularly in light of the prospect that some or all of the fifty-five other District Attorneys in California might seek to intervene if intervention were granted to the three District Attorneys. The panel dismissed this portion of the District Attorneys' appeal.

Concurring in part and concurring in the judgment, Judge Forrest joined the majority opinion except its alternative holding that this case was not moot because the parties' settlement and voluntary dismissal effectively functioned as a stay because the case can revive if certain specified events occur. Judge Forrest disagreed that granting intervention in a terminated case that may never revive is *itself* an effective remedy that gives the court jurisdiction to consider the merits. First, this relief is too illusory because it depends on the occurrence of events that may never happen. Second, this is not the relief that should guide the court's analysis.

Dissenting, Judge VanDyke agreed with the majority's conclusion that California District Attorneys' appeal was not moot. But because he concluded that the district court should have granted them intervention, he respectfully dissented. Judge VanDyke stated that the District Attorneys seeking to intervene in this suit and the California Attorney General have very different ultimate objectives. The District Attorneys would uphold and seek to help enforce Proposition 66 to retain the death penalty—on which a majority of the voters of California voted "Yes"—while the Attorney General must defend the Governor's contrary executive order instituting a moratorium on death penalty executions. Based on these divergent—indeed, opposed—interests, the District Attorneys had clearly met this prong of the intervention requirement. Judge VanDyke also found that the California statutory structure established a significantly protectable interest for the District Attorney, namely their ability to "perform 'any duty needed to enable it to execute the judgment [of death],'" which Proposition 66 showed is the will of the people in California. Because the District Attorneys held opposing interests and those interests were significantly protectable, Judge VanDyke would reverse the denial of the District Attorneys' intervention in this case.

---

## COUNSEL

Robert P. Brown (argued), Chief Deputy District Attorney; James R. Second, Deputy District Attorney; Jason Anderson, District Attorney; District Attorney's Office, San Bernardino, California; Michael A. Hestrin, District Attorney; Ivy B. Fitzpatrick, Managing Deputy District Attorney; Office of the District Attorney, Riverside, California; Stephen M.

Wagstaffe, District Attorney, Redwood City, California; for Movants-Appellants.

John R. Grele (argued), Law Office of John R. Grele, San Francisco, California; David A. Senior, Sara Cobbra, and Ann K. Tria, McBreen & Senior, Los Angeles, California; Norman C. Hile, Orrick Herrington & Sutcliffe LLP, Sacramento, California; Richard P. Steinken, Jenner & Block, Chicago, Illinois; Margo Rocconi, Federal Public Defender's Office, Los Angeles, California; for Plaintiffs-Appellees.

Misha D. Igra (argued), Supervising Deputy Attorney General; Monica N. Anderson, Senior Assistant Attorney General; Attorney General's Office, Sacramento, California; for Defendants-Appellees.

**OPINION**

W. FLETCHER, Circuict Judge:

In 2006, California death row inmate Michael Morales brought suit in federal district court against the Governor of California, the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), and the Warden of San Quentin State Prison. Morales sought a stay of execution on the ground that California's execution protocol violated the Eighth Amendment. The district court stayed the execution, and numerous death row inmates subsequently intervened as plaintiffs. After the State promulgated a new execution protocol in 2018, the District Attorneys of San Bernardino, San Mateo, and Riverside Counties sought to intervene as defendants. The district court denied intervention, and the District Attorneys timely appealed.

While the District Attorneys' appeal was pending, newly elected Governor Newsom withdrew California's new execution protocol, placed a moratorium on executions, and closed the execution chamber at San Quentin. Pursuant to a settlement among the parties, plaintiffs voluntarily dismissed their suit subject to specified conditions. The parties contend that the Governor's actions, or in the alternative plaintiffs' voluntary dismissal of their suit, render the District Attorneys' appeal moot.

We disagree with the parties and hold that the appeal is not moot. On the merits of the appeal, we affirm the district court's denial of intervention.

## I.  Background

In 2006, condemned prisoner Morales brought an Eighth Amendment challenge in district court to California's lethal injection protocol. After finding "critical deficiencies" in the protocol, the court held that the protocol violated the Eighth Amendment. *Morales v. Tilton*, 465 F. Supp. 2d 972, 979 (N.D. Cal. 2006). The court's holding resulted in a sustained de facto moratorium on executions in California. *See Morales v. Cate*, 623 F.3d 828, 830 (9th Cir. 2010).

In 2010, the CDCR promulgated a new lethal injection protocol. A California Court of Appeal held the new procedure presumptively valid and authorized the resumption of executions. *See CDCR v. Superior Court*, 2010 WL 3621873, at *4–5 (Cal. Ct. App. Sept. 20, 2010). The State then scheduled the execution of Albert Brown. Brown moved to intervene in the *Morales* litigation in federal district court and sought a stay of execution. The court granted intervention but denied the stay. Brown appealed the denial

of the stay. *Morales*, 623 F.3d at 829. We remanded to the district court under *Baze v. Rees*, 533 U.S. 35 (2008). *Id.* at 831. On remand, the court stayed Brown's execution. In the years following, an additional twenty-two plaintiffs intervened in the *Morales* litigation and obtained stays of execution.

The 2010 lethal injection protocol was challenged by condemned inmate Mitchell Sims in a suit in Marin County Superior Court. Sims argued that the CDCR's adoption of the 2010 protocol did not comply with the California Administrative Procedure Act ("Cal-APA"). *Sims v. CDCR*, 157 Cal. Rptr. 3d 409, 413 (Ct. App. 2013). The Superior Court enjoined the CDCR from carrying out executions "unless and until" it promulgated a new protocol that complied with the Cal-APA. *Id.* at 427. The California Court of Appeal affirmed. *Id.* at 428–29.

In November 2016, California voters passed Proposition 66, exempting certain lethal injection protocols from the Cal-APA. The Attorney General successfully defended Proposition 66 in the California Supreme Court. *See Briggs v. Brown*, 400 P.3d 29 (Cal. 2017). In March 2018, the CDCR promulgated a new lethal injection execution protocol. The Attorney General, representing the CDCR, joined a motion asking the Marin County Superior Court to vacate its injunction, on the ground that the new protocol was not subject to the Cal-APA requirements. The Superior Court granted the motion. We grant the parties' motion to take judicial notice of the documents in the case (Docket Nos. 38, 93). *See In re Korean Air Lines Co., Ltd., Antitrust Litig.*, 642 F.3d 685, 689 n.1 (9th Cir. 2011).

After the state court rulings, the sole issue remaining in the federal *Morales* litigation was the constitutionality of California's new 2018 execution protocol. In June and July 2018, the District Attorneys of San Bernardino, San Mateo and Riverside Counties moved to intervene in the *Morales* litigation under Federal Rule of Civil Procedure 24 and moved to vacate the stays of execution of the plaintiffs who had been convicted and sentenced in their counties.

The district court denied the motion to intervene as of right under Rule 24(a), holding that the District Attorneys did not have a significant protectable interest relating to the issue in the litigation, and that to the degree that they had such an interest it was adequately represented by the existing parties. The court also denied the motion for permissive intervention under Rule 24(b) on the grounds that the District Attorneys had failed to show a "common question of law and fact between [their] claim or defense and the main action," given that they had "no involvement in the drafting or implementation of any method-of-execution protocol," and that additional delays would likely result if they were allowed to intervene. The District Attorneys timely appealed the denial of intervention.

In 2019, after the District Attorneys filed their notice of appeal, newly elected Governor Newsom was substituted as a Defendant-Appellee in place of Governor Brown. In February 2019, plaintiffs filed a Fifth Amended Complaint challenging the constitutionality of the 2018 protocol. In March, Governor Newsom issued Executive Order N-09-19 ("the Executive Order"), withdrawing the lethal injection protocols, imposing a moratorium on all executions in California, and closing the execution chamber at San Quentin.

The parties moved twice in our court to dismiss the District Attorneys' appeal as moot. Defendants first moved to dismiss the District Attorneys' appeal on the ground that the Governor's Executive Order mooted the appeal. A motions panel of this court referred the motion to a merits panel. Following court-assisted mediation, the parties reached a settlement under which, pursuant to two stipulations, plaintiffs voluntarily dismissed their suit without prejudice. *See* "Stipulation Regarding Procedural Reinstatement of Fifth Amended Complaint" ("Reinstatement Stipulation") and "Stipulation for Voluntary Dismissal Without Prejudice." Defendants then filed a second motion to dismiss the District Attorneys' appeal, arguing that the dismissal of the underlying suit rendered the appeal moot. We grant plaintiffs' motion to join defendants' second motion to dismiss (Docket No. 92). Both motions are before us.

We first address mootness. We then address the merits of the appeal.

## II.  Discussion

### A.  Mootness on Appeal

We deny both motions to dismiss the appeal as moot. We address each in turn.

In their first motion to dismiss, defendants argue that because the Executive Order withdrew California's lethal injection protocol, placed a moratorium on all executions, and closed the execution chamber, the District Attorneys' interest in the litigation—whatever that interest might have been—no longer exists, and the appeal must therefore be dismissed as moot.

Parties seeking a dismissal based on mootness due to voluntary cessation bear "the heavy burden" of demonstrating that "the challenged conduct cannot reasonably be expected to start up again." *Bell v. City of Boise*, 709 F.3d 890, 898 (9th Cir. 2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). Defendants have failed to carry that burden.

Here, the "challenged conduct" is California's allegedly unconstitutional method of execution. The Reinstatement Stipulation provides that defendants will give plaintiffs' counsel and the district court "written notice" of the Governor's intention to withdraw the Executive Order and "written notice prior to (1) adopting an execution protocol and procedures, or (2) beginning any reassembly of a Lethal Injection Facility or Gas Chamber to conduct executions." Nothing prevents Governor Newsom, or a future Governor, from withdrawing the Executive Order and proceeding with preparations for executions. It is thus entirely possible that in the future, defendants will seek to resume executions in California, and will seek to do so under the current or a successor protocol. This is not a case where "the challenged conduct cannot reasonably be expected to start up again." *Bell*, 709 F.3d at 898.

We therefore deny the first motion to dismiss.

The parties' second motion to dismiss is based on their stipulated dismissal of the underlying suit. The parties argue that because there is no longer any suit into which the District Attorneys can intervene, we cannot provide any meaningful relief. They argue further that the District Attorneys' stated aim—vacating plaintiffs' stays of execution—was

accomplished when the stays were dissolved by the stipulated voluntary dismissal.

We recently wrote that "the parties' settlement and dismissal of a case after the denial of a motion to intervene does not as a rule moot a putative-intervenor's appeal." *United States v. Sprint Commc'ns, Inc.*, 855 F.3d 985, 990 (9th Cir. 2017). The question presented in *Sprint* was whether the settlement and dismissal of the underlying suit made it impossible for us to grant "'any effectual relief whatever'" to the putative intervenor if "we were to determine that the district court erred in denying his intervention." *Sprint*, 855 F.3d at 990 (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)); *see also W. Coast Seafood Processors Ass'n v. Nat. Res. Def. Council, Inc.*, 643 F.3d 701, 704 (9th Cir. 2011) ("An appeal is moot if there exists no present controversy as to which effective relief can be granted." (quotation marks and citation omitted)). Because some relief was possible, we held that the appeal was not moot.

Like *Sprint*, this case involves a settlement agreement reached after the denial of intervention. But, unlike *Sprint*, the settlement agreement in this case did not resolve the underlying ligation, which makes an even stronger argument against finding that this appeal is moot. The Reinstatement Stipulation provides that the underlying litigation will reactivate upon the occurrence of any of three specified events. The Stipulation provides, in relevant part:

> Following entry of the voluntary dismissal without prejudice, the action will terminate. The Parties agree that this Court shall retain jurisdiction over this matter solely for the

purpose of allowing: (1) any Party to enforce the terms of this Stipulation; (2) Plaintiffs the right to reinstate their Fifth Amended Complaint; and (3) the Court to reinstate the individual stays of execution as specified herein.

. . . .

The Fifth Amended Complaint will be immediately operative upon Plaintiffs providing written notice to Defendants and the Court should any of the following occur: (1) the Executive Order becomes inoperative, or is no longer in effect, or is withdrawn; or (2) Defendants have adopted an execution protocol; or (3) a District Attorney, court, or other state representative notices or moves for a date to set an execution for any death sentenced prisoner.

The conditions in the Reinstatement Stipulation distinguish this case from cases where we have held an appeal by would-be intervenors moot after termination of the underlying litigation. For example, we held moot the appeal of would-be intervenors in *West Coast Seafood*. The underlying suit challenged a National Marine Fisheries Service program to preserve groundfish species off the west coast of the United States. The district court denied the motion of West Coast Seafood Processors Association ("WCSPA") to intervene, and WCSPA appealed the denial. While the appeal was pending, the underlying suit was resolved on summary judgment, and the district court entered final judgment. Because the underlying litigation was

entirely resolved, we held the appeal moot. *W. Coast Seafood*, 643 F.3d at 704–05.

On two independently sufficient grounds, the parties' stipulation does not render the appeal moot. First, in contrast to *West Coast Seafood*, where all of the issues had been resolved and the suit could not be revived, this suit may be revived upon the occurrence of any of the three events specified in the Reinstatement Stipulation. The stipulated voluntary dismissal thus effectively functions as a stay. The district court contemplated a possible revival when it agreed to retain post-dismissal jurisdiction on the above terms. Because the case is functionally stayed, if we reverse the district court's denial of intervention, the District Attorneys can obtain the relief they seek by intervening if and when the suit is revived.

Second, even if the suit is not revived upon the occurrence of any of the three events, if we hear the current appeal and reverse the district court's denial of intervention, the District Attorneys can move in the district court under Federal Rule of Civil Procedure 60(b) to seek relief from the order of dismissal that was entered pursuant to the stipulation. *See In re Hunter*, 66 F.3d 1002, 1004–05 (9th Cir. 1995); *see also Yesh Music v. Lakewood Church*, 727 F.3d 356, 362–63 (5th Cir. 2013); *Nelson v. Napolitano*, 657 F.3d 586, 589 (7th Cir. 2011). If the district court denies their Rule 60(b) motion, the District Attorneys can appeal that denial. *See Lal v. California*, 610 F.3d 518, 523 (9th Cir. 2010).

We therefore deny the second motion to dismiss.

## B.  Intervention

The District Attorneys moved in the district court to intervene as of right under Rule 24(a) and permissively under Rule 24(b).

### 1.  Intervention as of Right under Rule 24(a)

"A district court's denial of a motion for intervention as of right is an appealable 'final decision.'"  *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).  We review *de novo* the merits of a district court's denial of intervention as of right.  *Id.*  When analyzing a motion to intervene of right under Rule 24(a)(2), we apply a four-part test:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc) (quoting *Sierra Club v. U.S. Env't. Prot. Agency*, 995 F.2d 1478, 1481 (9th Cir. 1993)); *see also United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (referring to "significant protectable interest").

The four parts of the test "often are very interrelated and the ultimate conclusion reached as to whether intervention is

of right may reflect that relationship." Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1908 (3d ed. 2020 update). "[I]t is incumbent on the party seeking to intervene to show that all the requirements for intervention have been met." *Chamness v. Bowen*, 722 F.3d 1110, 1121 (9th Cir. 2013) (quotation marks, citation, and alterations omitted). In determining whether intervention is appropriate, we are "guided primarily by practical and equitable considerations, and the requirements for intervention are broadly interpreted in favor of intervention." *Alisal Water Corp.*, 370 F.3d at 919.

We note at the outset the somewhat unusual nature of the District Attorneys' motion. In a typical motion to intervene, the moving entity or person is a would-be party, represented by an attorney, who alleges an interest that may be affected by the existing litigation. In this case, however, the District Attorneys are themselves attorneys, and they seek to intervene as attorneys. They seek to intervene in order to represent interests of the State, when the state entities—the Governor, the CDCR, and the Warden of San Quentin—are already parties and are already represented by the Attorney General.

For the reasons that follow, we conclude that the District Attorneys have failed to show that they have a significant protectable interest in the litigation. Because that failure alone is a sufficient ground to deny intervention as of right, we do not reach the question of whether the District Attorneys have failed to show that their interest is inadequately represented by the existing parties. *See Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009) ("Failure to satisfy any one of the requirements is fatal to the application, and we need not reach the remaining elements if one of the elements is not satisfied.").

A would-be intervenor has a significant protectable interest if the interest is protected by law and there is a relationship between that interest and the claim or claims at issue. *Alisal Water Corp.*, 370 F.3d at 919. A significant protectable interest will be found if a legally protected interest will suffer a practical impairment in the pending litigation. *Cal. ex. Rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006).

The core of the District Attorneys' argument is that they have a duty under state law to prosecute criminal cases. They argue:

> The District Attorneys are public prosecutors, whose offices are established to "conduct on behalf of the people all prosecutions for public offenses" under California state law. Cal. Gov't Code § 26500. The office is a constitutional one under state law. Cal. Const. art. XI, § 1(b). The public prosecutor has "sole discretion to determine whom to charge, what charges to file and pursue, and what punishment to seek." *Dix v. Superior Court,* 53 Cal.3d 442, 451 (1991). The District Attorneys *therefore* have a vested interest in the underlying litigation, which prevents that very punishment from being enforced.

(Emphasis added.)

The District Attorneys thus argue that because they have the "sole discretion" to charge and seek punishment, they have an interest in the plaintiffs' litigation. The flaw in their

argument is that neither their ability to charge nor their ability to seek punishment is at issue in this case. The issue before the district court was not whether it was legal for the District Attorneys to charge defendants with capital crimes. Nor was the issue the legality of any capital conviction and sentence the District Attorneys have obtained. Rather, the issue was the constitutionality of California's method of execution. This important but narrow issue does not substantially affect the District Attorneys in the exercise of their "sole discretion to determine whom to charge, what charges to file and pursue, and what punishment to seek." *Dix*, 53 Cal. 3d at 451.

District attorneys "enjoy[] neither plenary power nor unbridled discretion." *Safer v. Superior Ct. of Ventura Cty.*, 540 P.2d 14, 17 (Cal. 1975). As the California Supreme Court wrote in *Safer*,

> By the specificity of its enactments the [California] Legislature has manifested its concern that the district attorney exercise the power of his office only in such civil litigations as the lawmaking body has, after careful consideration, found essential. An examination of the types of civil litigation in which the Legislature has countenanced the district attorney's participation reveals both the *specificity and the narrow perimeters of these authorizations*.

*Id.* (emphasis added). The California Legislature's narrow enumeration of the types of civil cases in which the district attorney may participate "expresses its general mandate that public officers not use their funds and powers to intervene in

private litigation." *Id.* at 18; *see also People v. Superior Ct. (Humberto S.)*, 182 P.3d 600, 611–12 (Cal. 2008) ("[A] district attorney has no authority to prosecute civil actions absent specific legislative authorization."); Cal. Gov't Code §§ 26500–30 (detailing office of District Attorneys).

As relevant here, the District Attorneys have no authority to choose the method by which California will execute condemned inmates. That authority is assigned to the CDCR, whose Secretary is already a defendant in this case. *See* Cal. Penal Code § 3604. The District Attorneys also do not have authority to act as attorneys representing the Secretary of the CDCR or the other defendants in this case. Under California law, that authority is assigned to the Attorney General, who has represented the defendants in this case since its inception. *See* Cal. Gov't Code § 12512 ("The Attorney General shall . . . prosecute or defend all causes to which the State, or any State officer is a party in his or her official capacity.").

The District Attorneys point to no legislative authorization granting them the authority to represent the State's interest in this case. The best the District Attorneys can do is to point to California Penal Code § 3604.1(c), which provides, in relevant part:

> If the use of a method of execution is enjoined by a federal court, the Department of Corrections and Rehabilitation [CDCR] shall adopt, within 90 days, a method that conforms to federal requirements as found by that court. If the department fails to perform any duty needed to enable it to execute the judgment, the court which rendered the judgment of death shall order it to perform that duty on its

own motion, on motion of the District
Attorney or Attorney General, or on motion of
any victim of the crime . . . .

The current litigation is outside the scope of this statute.
First, there is no pending order by any federal court that
limits the execution methods California may use. Instead, it
is the actions of California state officials that have limited
executions. Second, the statute does not authorize District
Attorneys to engage in "adversarial litigation" either on
behalf of or against the CDCR. It only authorizes District
Attorneys to move in the state trial court that imposed the
death penalty for an order directing the CDCR to perform its
duty to carry out the court's judgment. (The Superior Court
need not wait for a motion by a District Attorney; it may set
an execution date on its own motion. *Id.*) The statute does
not authorize District Attorneys to defend the State's
execution protocols, promulgated by the CDCR, against
constitutional challenges in federal court.

We recognize that the litigation in this case incidentally
affects the manner in which the District Attorneys are able to
perform their assigned functions. The *Morales* litigation over
the constitutionality of California's proposed method of
execution has effectively suspended the death penalty in
California and has thereby prevented the District Attorneys
from successfully moving in the Superior Court to set
execution dates. But there is nothing in the District
Attorneys' general interest in executing condemned inmates,
nor in their more specific interest in requesting execution
dates, that amounts to a significant protected interest in the
*Morales* litigation, which concerns only the method by which
the State may perform executions. The District Attorneys
have neither the authority to choose a method of execution,

nor the authority to represent the state entity that makes that choice.  The ongoing *Morales* litigation thus does not impair any significant protectable interest of the District Attorneys. *See*, *e.g.*, *Alisal Water Corp.*, 370 F.3d at 920 (noting that an intervenor's claimed interest cannot be "several degrees removed from the [issues] that are the backbone of [the] litigation"); *City of Emeryville v. Robinson*, 621 F.3d 1251, 1259 (9th Cir. 2010) (noting that a would-be intervenor cannot "rely on an interest that is wholly remote and speculative").

Finally, although the denials of intervention are not perfectly analogous to the denial in the case before us, we note that District Attorneys in States in other circuits have been denied intervention in civil suits challenging some aspect of their States' criminal justice systems.  In those cases, our sister circuits have denied intervention on the ground that, while District Attorneys' duties may have been incidentally affected by the litigation, they had no significant protectable interest in the litigation.

In *Saldano v. Roach*, 363 F.3d 545 (5th Cir. 2004), a District Attorney moved to intervene in state prisoner Saldano's federal habeas corpus proceeding.  After Saldano argued he was denied due process in his sentencing proceedings, the Attorney General, representing named defendant Director of the Texas Department of Criminal Justice, confessed error and waived a procedural default bar. *Id.* at 550.  The District Attorney, who had prosecuted Saldano, moved to intervene to oppose Saldano's petition. *Id.* Although the District Attorney claimed authority to act as the State's representative, Texas law defining the duties and responsibilities of District Attorneys did not authorize a district attorney to represent the State in federal habeas

corpus proceedings. *Id.* at 551–52 ("Texas law does not grant the District Attorney the authority to represent the State here."). As in this case, the Attorney General, rather than the District Attorney, was authorized to represent the State. *Id.* The Fifth Circuit held that while the District Attorney would be affected by the litigation, he did not have a legally protectable interest that would merit intervention as of right. *Id.* at 556.

In *Harris v. Pernsley*, 820 F.2d 592, 597 (3d Cir. 1987), a District Attorney sought to intervene in a class action challenging conditions in Pennsylvania state prisons. After extensive litigation, the parties agreed to a consent decree limiting prison populations. *Id.* at 594. The District Attorney sought intervention to "prevent [the] settlement." *Id.* at 599. Under Pennsylvania law, District Attorneys had the authority to prosecute cases, advocate specific bail levels, appeal bail determinations, advocate sentences, and defend convictions. *Id.* at 598. The District Attorney argued on two grounds that the proposed settlement would "adversely affect his functions." *Id.* at 599. First, a cap on prison populations would result in the release of inmates who had not posted bond or who had not served their full sentences, which would hamper his ability to prosecute cases. *Id.* Second, a cap would make it difficult for city jails to admit new convicted inmates, which would "render meaningless" the District Attorney's prosecutorial duties. *Id.* The Third Circuit held that while the District Attorney would be affected by the consent decree, that effect did not confer a "right to become a party to any consent decree entered in this case." *Id.* at 602.

In sum, California law does not authorize the District Attorneys to defend the State against constitutional challenges to execution protocols. We therefore conclude

that the District Attorneys do not have a "significant protectable interest" in the *Morales* litigation.

## 2.  Permissive Intervention

We have jurisdiction over a district court's denial of permissive intervention only if we conclude the district court abused its discretion.  *City of L.A.*, 288 F.3d at 397.  If the district court did not abuse its discretion, we must dismiss the appeal for lack of jurisdiction.  *Glickman*, 159 F.3d at 411.

"An applicant who seeks permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims."  *Id.* at 412.  "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention."  *Id.*  In exercising its discretion, the district court must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties.  *Id.* (citing Fed. R. Civ. P. 24(b)(2)).  "An abuse of discretion occurs if the district court bases its decision on an erroneous legal standard or on clearly erroneous findings of fact."  *Smith v. Marsh*, 194 F.3d 1045, 1049 (9th Cir. 1999) (citation omitted).

The district court denied permissive intervention on two grounds.  First, the court found that there was no common question of law or fact between the District Attorneys' "claim or defense and the main action" within the meaning of Rule 24(b).  Fed. R. Civ. P. 24(b).  The question in the "main action" was whether California's challenged execution protocol was constitutional.  The District Attorneys had no

role in promulgating the CDCR's execution protocol and were not authorized under California law to represent the CDCR or the other defendants in defending the constitutionality of the protocol.

Second, the court found that intervention by the District Attorneys would delay the already long-drawn-out litigation, particularly in light of the prospect that some or all of the fifty-five other District Attorneys in California might seek to intervene if intervention were granted to the three District Attorneys. *See Montgomery v. Rumsfeld*, 572 F.2d 250, 255 (9th Cir. 1978) ("The district judge acted well within his discretion when he decided that 13 additional plaintiffs would unnecessarily delay and complicate the case, and that decision is also affirmed."); *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 380 (1987) ("Particularly in a complex case such as this, a district judge's decision on how best to balance the rights of the parties against the need to keep the litigation from becoming unmanageable is entitled to great deference.").

We hold that the district court did not abuse its discretion in denying permissive intervention on these grounds. We therefore dismiss this portion of the District Attorneys' appeal. *Glickman*, 159 F.3d at 411.

## Conclusion

We hold that the District Attorneys' appeal of the district court's denial of their motion to intervene is not mooted by Governor Newsom's Executive Order or by the stipulated voluntary dismissal. On the merits of the appeal, we hold that the District Attorneys have not shown a significant protectable interest in the litigation. We therefore hold that

the district court properly denied intervention as of right
under Rule 24(a). We also hold that the district court did not
abuse its discretion in denying permissive intervention under
Rule 24(b).

**AFFIRMED in part, DISMISSED in part.**

FORREST, Circuit Judge, concurring in part and concurring
in the judgment:

I join the majority opinion except its alternative holding
that this case is not moot because the parties' settlement and
voluntary dismissal "effectively functions as a stay" because
the case can revive if certain specified events occur. Maj. Op.
at 15. As the majority notes, we have established that a
settlement and resulting dismissal following a motion to
intervene "does not as a rule moot a putative-intervenor's
appeal." *United States v. Sprint Commc'ns, Inc.*, 855 F.3d
985, 990 (9th Cir. 2017). This rule recognizes that often the
original parties' resolution of an action does not provide the
relief sought by the would-be intervenor. *Id.* (citing *CVLR
Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 475 (4th
Cir. 2015)). Thus, the relevant question for determining
whether a settlement renders a case moot as to an intervenor
is whether "the settlement and dismissal of the underlying
case 'make[] it impossible . . . to grant any effectual relief
whatever' to the putative intervenor" if the district court's
denial of intervention were reversed. *Id.* (quoting *Church of
Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)).

Equating the parties' stipulated voluntary dismissal in this
case with a stay, the majority reasons that we can grant

effective relief to the District Attorneys by considering their denial-of-intervention appeal because, if we reverse, "the District Attorneys can obtain the relief they seek by intervening" in the [not-yet-and-may-never-be] revived suit. Maj. Op. at 15. I disagree that granting intervention in a terminated case that may never revive is *itself* an effective remedy that gives us jurisdiction to consider the merits. First, this relief is too illusory because it depends on the occurrence of events that may never happen. Second, this is not the relief that should guide our analysis.

In determining whether we can grant "any effective relief whatever," *Church of Scientology of Cal.*, 506 U.S. at 12, we must consider the relief the putative intervenors seek in the underlying litigation—i.e., *what they want to accomplish by intervening*. *See, e.g., id.* at 12–15 (analyzing discovery relief putative intervenor hoped to obtain); *Sprint Commc'ns, Inc.*, 855 F.3d at 990 (analyzing the statutory right to money damages and ability to object to settlement that putative intervenors sought and concluding there was a possibility of proving effectual relief because "[i]f we were to conclude [intervenor] had a right to intervene . . . , he might be able to object to the settlement or otherwise seek his share of the proceeds"); *DBSI/TRI IV Ltd. P'ship v. United States*, 465 F.3d 1031, 1036–37 (9th Cir. 20016) (analyzing putative intervenor's requested relief of setting aside the direct parties' stipulated judgment as violative of statute and reasoning that "if it were concluded on appeal that the district court had erred in denying the intervention motion . . . then the applicant would have standing to appeal the district court's judgment"). Intervening is a means to an end, not an end in and of itself. *See, e.g.,* Fed. R. Civ. P. 24 (noting prerequisite of intervention for any purpose is that the intervenor have an interest in a claim or defense in the litigation); 7C Charles A.

Wright, Arthur R. Miller, Mark K. Kane, Fed. Prac. & Proc. § 1901 (3d ed. 2021) (discussing one purpose of intervention is allowing "those on the outside" of a lawsuit to become a party if they "believe that a decision may have an effect on them").

The District Attorneys make an efficiency argument for why we should address the merits of intervention—resolving this procedural issue now prevents them from having to re-raise it if the case ever revives in the future. But what they really want is to pursue a more aggressive litigation strategy than what the Attorney General has pursued—a strategy that "allows the voice of the People who obtained death judgments" to be heard. This larger strategy goal assuredly includes seeking to have the stipulated voluntary dismissal, which occurred after the District Attorneys appealed their failed attempt to intervene, set aside. While intervening is necessary for the District Attorneys to achieve their larger strategy goal, intervention does not itself dictate whether there is "any effectual relief whatever" that we could grant sufficient to maintain our jurisdiction over the case. *Church of Scientology of Cal.*, 506 U.S. at 12. Rather, the relevant effectual relief for purposes of the mootness analysis is the District Attorneys' ability to seek relief from the voluntary dismissal if allowed to intervene, regardless of whether any of the triggering events for reviving the case ever occur. Therefore, I agree with the majority that this case is not moot, but only for the second reason on which the majority relies.

VANDYKE, Circuit Judge, dissenting:

I agree with the majority's conclusion that California District Attorneys' appeal is not moot. But because I conclude the district court should have granted them intervention, I respectfully dissent.[1]

Even the casual observer would recognize that the District Attorneys seeking to intervene in this suit and the California Attorney General have very different ultimate objectives. The District Attorneys would uphold and seek to help enforce Proposition 66 to retain the death penalty—on which a majority of the voters of California voted "Yes"—while the Attorney General must defend the Governor's contrary executive order instituting a moratorium on death penalty executions. Based on these divergent—indeed, opposed— interests and the applicable law, I would reverse the denial of the District Attorneys' intervention in this case.

Federal Rule of Civil Procedure 24(a)(2) governing intervention is interpreted "broadly in favor of proposed intervenors," *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th. Cir. 2011) (citation omitted), and because "courts are guided primarily by practical and equitable considerations," there is a presumption "in favor of intervention." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). That presumption, combined with the inadequacy of the Attorney General's current representation and the District Attorneys' significantly protectable statutory interests in preserving the sentenced

---

[1] Because I conclude the District Attorneys should have been granted intervention as of right, I would not reach the arguments for permissive intervention.

method of punishment, leads me to conclude that the District Attorneys should be allowed to intervene as of right.

## 1. Inadequate Representation by Current Parties

The District Attorneys and the Governor (through his counsel, the Attorney General) pursue diametrically opposed objectives in this case, and no presumption of adequate representation arises from any shared goals. *Compare Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950–51 (9th Cir. 2009) (noting that the ultimate objectives of the Campaign and the Proponents were identical and finding that the Campaign's interest was adequately represented). The Attorney General entered a settlement to lift the stays of execution for the plaintiffs in *Morales v. Kernan*, Nos. 06-cv-0219; 06-cv-0926, 2017 WL 8785130 (N.D. Cal. Dec. 4, 2017), because his client, Governor Newsom, issued Executive Order N-09-19 "grant[ing] reprieves . . . to all . . . people sentenced to death in California." The stays in the underlying litigation were no longer necessary to achieve the Governor and Attorney General's objective: to prevent the imposition of the death penalty.[2]

But obviously this is not the aim of the District Attorneys, who argue they represent "the voice of the People who obtained the death judgments," which the District Attorneys intend to see through to completion. As they correctly argue, "the governor's issuance of the order strengthens the District Attorneys' position that the Attorney General is not involved in this case to represent the interests of the People" who

---

[2] The majority acknowledges that, far from being adversarial to the plaintiffs' desire to suspend their executions, "it is the actions of California state officials that have limited executions."

passed Proposition 66 to "give[] crime victims the right to timely justice" through an effective and efficient death penalty system. *See* Death Penalty Reform and Savings Act, 2016 Cal. Legis. Serv. Prop. 66 § 2 ¶ 10.

It's flirting with absurdity to characterize, as the district court did in denying intervention, the disagreement between the District Attorneys and the Attorney General as "mere differences in litigation strategy." *Proposition 8 Off. Proponents*, 587 F.3d at 954 (cleaned up). The Attorney General's entire litigation strategy for the past few years has operated to block the District Attorneys' involvement in the case, precisely because they have very divergent interests. The Attorney General entered a settlement to dismiss the stays during the pendency of the Governor's moratorium on executions, but stipulated that the case and its stays would spring back into place if the moratorium were lifted. This ensures that, contrary to the District Attorneys' stated goal, no executions will occur. It is precisely because of these competing interests—rather than mere differences of opinion about the pace of the case or how an argument should be made—that the Attorney General opposes the District Attorneys' intervention.[3]

---

[3] The State Defendants argue that where the Attorney General appears on behalf of the state "there is no ground for allowing intervention by any other public officer." But the District Attorneys are correct in claiming that the Attorney General's involvement in this case "is as counsel to various state executive officers related to their ministerial roles, rather than as California's top prosecutor." In executing his "multiple roles," the Attorney General may support new policies from the Governor that conflict with current law, which is the case here: Proposition 66 enshrines in statute the will of the People to continue executions, while the Governor's executive order is explicitly opposed to any executions in California. *See* Death Penalty Reform and Savings Act, 2016 Cal.

The Fifth Circuit's *Saldano v. Roach* decision highlights the significant conflicting interests in this case. 363 F.3d 545 (5th Cir. 2004). In *Saldano*, the Fifth Circuit ultimately denied a district attorney's attempt to intervene in a federal habeas appeal, but it never pretended that the Attorney General and the district attorney shared similar litigation goals. The Attorney General in *Saldano* sought to admit error in the state habeas proceedings, *id.* at 549, while the district attorney pursued intervention to defend the judgment he earned in the underlying state habeas proceedings, *id.* at 549 n.1. They sought to advance conflicting arguments. But in denying intervention the court acknowledged and relied on the unique structure of habeas appeals under Texas "state law, which has chosen the Attorney General, rather than the various district attorneys, to represent the State in federal

---

Legis. Serv. Prop. 66; Cal. Penal Code § 3604.1(b); *see also* Exec. Order N-09-19 (Mar. 13, 2019), https://www.gov.ca.gov/wp-content/uploads/2019/03/3.13.19-EO-N-09-19.pdf. That these two positions conflict is evident without an official acknowledgment from the Attorney General, and any presumption that he represents *both* positions is easily rebutted here.

Nor does the Attorney General's supervisory role over District Attorneys in the California Constitution indicate unity of purpose in this case. Such supervision "does not contemplate control, . . . and district attorneys cannot avoid or evade the duties and responsibilities of their . . . offices by permitting a substitution of judgment." *People v. Brophy*, 49 Cal. App. 2d 15, 28 (Dist. Ct. App. 1942). The structure of this supervision reflects the "goal [of] efficiency and horizontal coordination, rather than a desire to weaken district attorneys or give the Attorney General additional power." *Goldstein v. City of Long Beach*, 715 F.3d 750, 756–57 (9th. Cir. 2013). Furthermore, the supervisory constitutional provision does not permit the Attorney General to dictate policy to a district attorney. *See id.* at 756. The Attorney General's supervisory role has no bearing on whether he represents the interests of the District Attorneys in this litigation.

habeas corpus suits." *Id.* at 553. While the court in *Saldano* stated in passing dicta that both the Attorney General and the district attorney in that case shared the "identical interest . . . [of] see[ing] that justice is done," that bromide is always true and never particularly helpful. One party's view of "justice" can demand precisely the opposite result required by another's view, and the fact that both parties seek "justice" does not somehow reconcile their positions.

Concluding that both the Attorney General and the District Attorneys seek the same outcome in this case completely ignores the "practical and equitable considerations" that normally drive our intervention analysis. *Alisal*, 370 F.3d at 919. Sure, they both seek their version of "justice." But they viscerally disagree as to whether applying the death penalty achieves that goal. I find that the District Attorneys satisfied this prong of the analysis under Rule 24(a)(2), which counsels toward granting their motion to intervene.

## 2.  Significantly Protectable Interest

Given the "room for disagreement . . . over the meaning of the term . . . significantly protectable interest," *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003) (citation omitted), and the persistent "broad[] interpret[ation] in favor of intervention," *Alisal*, 370 F.3d at 919, I conclude that the District Attorneys provided sufficient evidence of a protectable interest. The District Attorneys demonstrated their statutorily mandated interest in the completion of death penalty judgments, obtaining such judgments, and scheduling executions.

The District Attorneys rely on *Blake v. Pallan* to argue that as "state official[s] [they have] a sufficient interest in adjudications which will directly affect [their] own duties and powers under the state laws." 554 F.2d 947, 953 (9th Cir. 1977). The strongest evidence of the District Attorneys' protectable interests is provided in California Penal Code section 3604.1(c), which explicitly empowers district attorneys to file a motion if necessary to order the California Department of Corrections and Rehabilitation (CDCR) to perform "any duty needed to enable it to execute the judgment [of death]." This statute codifies the District Attorneys' specific interest in ensuring that death penalty judgments are carried out.

Notwithstanding the majority opinion's litany of actions it believes section 3604.1(c) does *not* authorize, section 3604.1(c)'s directive to file a motion to "order [CDCR] to perform [its] duty" is a civil, not criminal function—making it clear that District Attorneys are empowered to represent the State and the People in *civil* litigation involving the legality of state agency procedures. True, the statute does not contemplate all the ways another state official might contrive to subvert CDCR's duties, so this exact intervention process is not explicated in the statute. But section 3604.1 affirmatively authorizes the District Attorneys to take civil action to enforce sentences. Section 3604.1(c) demonstrates the District Attorneys' significantly protectable statutory interest in the enforcement of death penalty convictions, and that interest—demonstrated by statute—alone satisfies the last prong required in the intervention-by-right analysis.[4]

---

[4] If not the District Attorneys, then who else? The victims of the murders perpetrated by the inmates in the underlying litigation would

Even beyond the clear statutory interest created through Proposition 66 in section 3604.1(c), the majority *admits* that preventing the District Attorneys from intervening in this case affects the District Attorneys' ability to carry out their general statutory duty to enforce punishments imposed by the state court. But the majority insists that denying intervention only "incidentally affects the manner in which the District Attorneys are able to perform their assigned functions," because the underlying stays in the *Morales* litigation only "prevent[] the District Attorneys from successfully moving in the Superior Court to set execution dates."[5]

That's a little like saying that a statute only "incidentally affects" car dealers because all it does is prevent them from selling cars. Ensuring that death sentences are carried out is an obviously important and weighty duty—one that the People of California recently reinforced by passing

---

likely not have standing to enforce the executions and the District Attorneys are the only entities pursuing those victims' interests.

[5] While the majority relies on the fact that "there is no pending order by a federal court" directly limiting the available methods of punishment, that is *exactly* the object of the *Morales* litigation. As the majority notes, "the sole issue remaining in the federal *Morales* litigation [is] the constitutionality of California's new 2018 execution protocol." Thus, if the *Morales* litigation reopens, which the majority acknowledges could happen, and the District Attorneys are not allowed to intervene, an order barring the state's use of its execution protocol is very possible—perhaps likely. And it is not clear what the majority means in relying on the lack of a "pending order." If the majority means to suggest that the District Attorneys cannot intervene until after the district court actually issues an unfavorable order, then what is the point of creating a process by which parties may intervene to make their case *before* an adverse order is issued? Indeed, if the District Attorneys waited to intervene until after the district court issued an order limiting California's execution methods, they might be barred from intervening because their motion would be untimely.

Proposition 66.   I cannot agree with the majority's minimization of both the legal and public duties of the District Attorneys.   In California, district attorneys "ordinarily [have] sole discretion to determine whom to charge, what charges to file and pursue, and what punishment to seek." *Dix v. Superior Court*, 53 Cal. 3d 442, 451 (1991). The majority asserts that this interest is not "significantly protectable" in this case because it does not precisely mirror the *Morales* litigation's concerns with the method of execution.   But the Supreme Court has long recognized a "State's *significant interest* in enforcing its criminal judgments," *Nelson v. Campbell*, 541 U.S. 637, 650 (2004) (emphasis added), which is exactly what the District Attorneys contend is being stymied.   In fact, particularly in this case where only the District Attorneys are attempting to effectuate the intent of the People of California as enshrined in Proposition 66, "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of *irreparable injury*." *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) (emphasis added) (alterations and citation omitted).   Given this court's presumption in favor of intervention, I find that both the specific mandate to schedule executions and the general mandate to enforce criminal judgments easily satisfy the broad definition of "significantly protectable interests." *Arakaki*, 324 F.3d at 1084.[6]

---

[6] There are examples in other circuits where district attorneys were allowed to intervene and participate in cases regarding petitioners' method of punishment. *See, e.g., Carmona v. Ward*, 576 F.2d 405, 408 (2d Cir. 1978) (demonstrating that the Albany County District Attorney intervened on behalf of the state to participate in a case regarding "whether the mandatory maximum sentence of life imprisonment imposed on appellees is unconstitutional under the Eighth Amendment").

The majority's two out-of-circuit cases addressing this issue do not present a strong argument to the contrary. As noted above, the Fifth Circuit's *Saldano* opinion specifically relied on the structural separation of duties under Texas law that specifically placed federal habeas cases in the sole ambit of the Attorney General. *Saldano*, 363 F.3d at 553. In the Third Circuit case *Harris v. Pernsley*, the district attorney sought to intervene arguing that his prosecutorial power would be hampered by the prison population cap determined by a settlement agreement between the city and the plaintiffs. 820 F.2d 592, 599 (3d Cir. 1987). The court determined the district attorney had "no legal duties or powers with regard to the conditions in the Philadelphia prison system," and the settlement did "not alter any of [the district attorney's] duties." *Id.* at 600. The district attorney in *Harris*, unlike the District Attorneys in this case, could not point to specific statutory duties affected by the settlement. *See id.*

*Harris* resurfaced in the Third Circuit after the Pennsylvania legislature passed a statute "purporting to confer automatic standing on the district attorney in prison litigation under which prisoners might be released." *Harris v. Reeves (Harris II)*, 946 F.2d 214, 217 (3d Cir. 1991). This second iteration is more similar to the present facts because the Pennsylvania District Attorney could point to specific statutory authority to argue he had "significant protectable interests." But the Third Circuit again found, despite the language of the new statute, that "[s]imply stating that the district attorney has a legal interest does not make it so," and argued the other substantive duties of the district attorney had not changed. *Id.* at 222. The dissent in that case "totally disagree[d]," and "conclude[d] that the Pennsylvania legislature . . . conferred the necessary legal interest upon the District Attorney of Philadelphia to intervene." *Id.* at 225

(Aldisert, J., dissenting).  The law of the case dictated that the district attorney's duties must be enshrined in Pennsylvania law to present a sufficient interest to intervene, and the legislature did exactly that.  *Id.* at 226–28 (Aldisert, J., dissenting).    The dissent emphasized that "when the Commonwealth has by statute assigned the District Attorney a legal interest in proceedings, we must recognize that interest as surely as we must follow any state statute."  *Id.* at 229 (Aldisert, J., dissenting).

I agree with the dissent in *Harris II*.  States enact laws to represent the will of the people and may confer legal duties on state officers.  The majority in *Harris II* could not articulate a substantive reason for its continued denial after the legislature explicitly followed the instructions from *Harris* and changed the law to ensure the district attorney could intervene.  The present case and *Harris II* both concern district attorneys with enumerated statutory duties that constitute significantly protectable interests justifying intervention, and I conclude that this requirement of Rule 24(a)(2) is met by the District Attorneys seeking to intervene in this case, who have multiple statutory interests at stake.

\*     \*     \*

Allowing intervention would ensure the District Attorneys could represent their (and the People's) interests in effectuating Proposition 66.  The District Attorneys' motion to intervene is meritorious because it satisfies the Rule 24(a)(2) four-part test's requirements that the Governor and his counsel do not adequately represent the District Attorneys' interest in commencing executions, and the District Attorneys have multiple significantly protectable statutory interests in carrying out death penalty sentences.  I

would reverse the district court's denial of the District Attorneys' motion to intervene as of right.